# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CONTRACT OFFICE INSTALLATIONS, INC. d/b/a SITELINE INTERIOR CARPENTRY, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 1:17 CV 3729<br>) Hon. Marvin E. Aspen |
| HOLLMAN, INC., | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Contract Office Installations, Inc., d/b/a Siteline Interior Company ("Siteline") filed this breach of contract action in the Circuit Court of Cook County, Illinois, alleging Defendant Hollman, Inc. ("Hollman") failed to pay Siteline for work it performed installing wood and laminate lockers in four fitness facilities. (Notice of Removal (Dkt. No. 1).) Hollman removed the case to federal court on May 18, 2017 and filed its answer on June 8, 2017. (Dkt. Nos. 1, 8.) Presently before us is Hollman's motion to transfer venue to the United States District Court for the Northern District of Texas, Dallas Division. (Mot. (Dkt. No. 12).) For the reasons stated below, we deny Hollman's motion.

## BACKGROUND

Hollman is a Texas corporation with its principal place of business in Irving, Texas. (Notice of Removal ¶ 4; Compl. (Dkt. No. 1–1) ¶ 2.) Hollman manufactures wood and laminate lockers in Texas for various facilities, including fitness centers, country clubs, and colleges. (Compl. ¶ 2; Hollman Aff. (Dkt. No. 12–1) at 1.) Hollman sells the lockers it manufacturers to

various purchasers around the country. (Hollman Aff. at 1.) Hollman arranges for the delivery of the lockers, but it does not perform installation. (*Id.*) In some instances, Hollman contracts out the installation to independent contractors. (*Id.* at 2.)

Siteline is a Midlothian, Illinois interior carpentry subcontractor engaged in various construction projects in the Chicago area. (Compl. ¶ 1.) As relevant here, Siteline entered into contracts to install Hollman's lockers in connection with construction projects at (1) the Los Angeles Valley College Athletic Training Facility ("the LA Valley Project"); (2) the Chicago Cubs' locker room at Wrigley Field (the "Wrigley Project"); (3) Credit Suisse in New York City (the "Credit Suisse Project"); and (4) the Naperville Park District in Naperville, Illinois (the "Fort Hill Project"). (*Id.* ¶ 4.) Siteline alleges it contracted with Hollman for each project. (*See id.* ¶¶ 5–19.)

However, Hollman asserts it entered into installation contracts with Cal Installations, LLC ("Cal Installations"), a Texas-based company, to furnish labor and materials in connection with the installation of Hollman's lockers, and Cal Installations subcontracted work for each of the facilities to Siteline. (Jefferson Aff. (Dkt. No. 12–2) at 1.) Hollman contends it did not participate in the agreements between Cal Installations and Siteline. (Mot. at 3.) It asserts that the "majority of the communications surrounding these agreements came in the form of agreements between Cal Installations representative, Scott Jefferson, and Siteline, where Siteline would send correspondence and invoices to Cal Installations located in Texas." (*Id.*) Neither Cal Installations nor Jefferson is named as a defendant.

Siteline brought suit against Hollman on March 14, 2017 in state court, asserting claims for breach of contract and, in the alternative, *quantum meruit*. It alleges that Hollman required Siteline to furnish labor and materials for the LA Valley, Wrigley, Credit Suisse, and Fort Hill

2

Projects, and despite performing all of its contractual duties, Hollman failed to pay Siteline for all of the labor and materials it provided. (*Id.* ¶¶ 15–54.) After removing the case to federal court and filing its answer, Hollman moved to transfer this action to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). Hollman argues transfer would serve the convenience of the parties and witnesses because the operative facts giving rise to the litigation, the situs of material events, the location of proof, and critical witnesses all have a stronger connection to Texas than to Siteline's chosen forum in Illinois. (Mot. at 1.) Hollman also contends the interests of justice favor transfer. (*Id.* at 2.)

On September 26, 2017, we requested additional briefing on Hollman's motion to transfer. (Dkt. No. 19.) Both parties filed supplemental briefs in compliance with our Order on October 16, 2017. (Dkt. Nos. 20–21.)

## ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), a district court may "for the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought." To succeed on a motion to transfer under § 1404(a), the defendant, as the moving party, bears the burden of showing that: (1) venue is proper in the district where the action was originally filed, (2) venue would be proper in the transferee court, and (3) the transfer will serve the convenience of the parties and witnesses as well as the interests of justice. *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLC*, 240 F. Supp. 3d 848, 851 (N.D. Ill. 2016); *Morton Grove Pharmss., Inc. v. Nat'l Pediculosis Ass'n*, 525 F. Supp. 2d 1039, 1044 (N.D. Ill. 2007); *Graham v. United Parcel Serv.*, 519 F. Supp. 2d 801, 809 (N.D. Ill. 2007). In deciding whether transfer is proper under § 1404(a), we resolve factual conflicts in the non-moving party's favor. *Cinema Sys.,*

3

*Inc. v. Lab Methods Corp.*, 545 F. Supp. 403, 405, n.4 (N.D. Ill. 1982); *see also Middleby Marshall, Inc. v. Enertex, Inc.*, No. 87 C 5338, 1987 WL 16906, at *4 (N.D. Ill. Sept. 9, 1987).

Here, the parties do not dispute that venue is proper in both this district and the transfer district; accordingly, we focus on whether the transfer will serve the convenience of the parties and witnesses and the interests of justice. Deciding whether to transfer a case requires "flexible and individualized analysis" based on the circumstances of a particular case. *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (internal citations omitted); *see also Graham*, 519 F. Supp. 2d at 809. District courts determine the weight given to each factor and have wide discretion in deciding whether transfer is appropriate. *N. Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 648 (7th Cir. 1998); *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 974 (7th Cir. 1988); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

### A. Convenience Factors

As the party seeking transfer, Hollman has the burden to show that "the transferee forum is clearly more convenient" than the transferor forum. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (internal citations omitted); *Coffey*, 796 F.2d at 219; *Graham*, 519 F. Supp. 2d at 809. In deciding whether transfer would promote convenience, courts consider such factors as: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of witnesses." *Morton Grove Pharms.*, 525 F. Supp. 2d at 1044 (citing *Schwartz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 835 (N.D. Ill. 2004)); *see also Graham*, 519 F. Supp. 2d at 809–10.

1. Plaintiff's Choice of Forum

"The plaintiff's choice of forum is usually given substantial weight, particularly if it is also the plaintiff's home forum." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009); *accord Republic Techs.*, 240 F. Supp. 3d at 851. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 843 (1947)); *see also Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007). "However, this deference is not absolute and the weight given to the plaintiff's choice of forum can vary depending upon the circumstances of each case." *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006).

Hollman argues Siteline's choice of forum is not dispositive and should receive less deference because the Northern District of Illinois has "relatively weak connections with the operative facts giving rise to the litigation." (Mot. at 5.) Specifically, Hollman contends that the "facts at issue center around negotiations, e-mails, and agreements between Hollman's independent contractor, Scott Jefferson of Cal Installations (located in the Northern District of Texas)[] and Siteline, and contracts between Hollman and Cal Installations (both companies based in the Northern District of Texas)."[1] (*Id.*) Therefore, Hollman argues the operative facts giving rise to the litigation are more closely tied to Texas. (*Id.*)

---

[1] Hollman takes the position that it did not contract directly with Siteline. (Mot. at 5; *see also generally* Answer (Dkt. No. 8).) Rather, it asserts it entered into contracts with third-party independent contractor Cal Installations, and Siteline then contracted with Cal Installations for work on the four construction projects at issue. (Hollman Aff. at 1–2; Mot. at 5; Reply Br. (Dkt. No. 18) at 3.)

Siteline maintains Hollman—not Cal Installations or Jefferson—sought Siteline's services and entered into contracts with Siteline. (*See* Pl.'s Supp. Br. (Dkt. No. 21) at 2–3, 5.) Siteline asserts that it at all times reasonably believed Jefferson was Hollman's employee and that it contracted with Hollman directly. (*See* Pl.'s Resp. (Dkt. No. 17) at 5; Frangella Aff. (Dkt. No. 17–1) ¶¶ 10–13.) Siteline resides in its chosen forum and it argues it discussed, negotiated, and executed the contract at issue in Illinois, in addition to performing work on two of the four projects in Illinois. (Pl.'s Resp. at 3.)

Hollman's transfer motion ignores Siteline's involvement: Siteline participated in the same negotiations, communications, and agreements in dispute, and it did so from its home in Midlothian, Illinois. (Pl.'s Resp. at 3.) Setting aside the parties' dispute about whether Siteline contracted with Hollman or with an independent contractor, the operative facts giving rise to the lawsuit are at best split evenly between Texas and Illinois, such that we cannot conclude the "balance is strongly in favor" of Hollman. *In re Nat'l Presto Indus.*, 347 F.3d at 664. Siteline elected to bring this lawsuit in the Northern District of Illinois as a result of the proximity to its residence in Midlothian, Illinois, and that choice is entitled to substantial weight. *Jaramillo*, 664 F. Supp. 2d at 914; *Republic Techs.*, 240 F. Supp. 3d at 851.

2. Situs of the Material Events and Access to Proof

Next, Hollman argues that the situs of material events favors transfer to the Northern District of Texas, because the negotiation and execution of the contracts involved telephone and email communications with Hollman and/or Cal Installations, whose representatives were located in Irving, Texas. (Mot. at 5.) Hollman contends that none of the negotiations regarding subcontracting work took place physically in Illinois. (*Id.*) Again, however, Hollman's position

overlooks that the other half of those communications involved Siteline, who was engaging in the same negotiations and communications from its home base in Illinois.

In addition, sources of proof are located in both districts, including the parties' respective payment records, invoices, correspondence, and other documents. This factor is therefore relatively neutral in our transfer analysis. In any event, "the location of a party's documents and records is usually not a very persuasive reason to transfer a case." *Morton Grove Pharms.*, 525 F. Supp. 2d at 1045–46 (quotations omitted); *accord Republic Techs.*, 240 F. Supp. 3d at 853 (observing this factor "has become less important in recent years 'because documentary and digital evidence is readily transferable and transporting it generally does not pose a high burden upon either party'" (quoting *Cabellero v. Taylor*, No. 12 C 8645, 2013 WL 2898254, at *3 (N.D. Ill. June 13, 2013)); *Simonoff v. Kaplan*, No. 09 C 5017, 2010 WL 1195855, at *2 (N.D. Ill. Mar. 17, 2010) ("[D]ocuments and records are easily transportable . . . and their location generally is not a persuasive reason for transfer."). Accordingly, the situs of material events and the location of proof are venue-neutral factors.

### 3. Convenience of Parties and Witnesses

Hollman also asserts that the convenience of the parties and witnesses favor transfer. (Mot. at 6; Reply at 5.) In considering the convenience of the parties, we weigh "the parties' respective residences and their ability to bear the expenses of litigating in a particular forum." *Genocide Victims of Krajina v. L–3 Services, Inc.*, 804 F. Supp. 2d 814, 826 (N.D. Ill. 2011); *see also Tingstol Co. v. Rainbow Sales, Inc.*, 18 F. Supp. 2d 930, 934 (N.D. Ill. 1998). As the moving party, Hollman has the burden of showing that the "original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff."

*Cont'l Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, at *5 (N.D. Ill. Sept. 18, 2009).

Here, although Hollman is a resident of Texas and would no doubt be inconvenienced by litigating in Illinois, a transfer would only shift the inconvenience to Siteline, an Illinois corporation that would be compelled to litigate its claims in Texas. *First Nat'l Bank*, 447 F. Supp. 2d at 912–13 (explaining a motion to transfer cannot be used to shift one party's inconvenience onto another party); *see also Heller*, 883 F.2d at 1293 (finding the convenience of the parties and witnesses does not favor transfer where the transfer may be more convenient for one party's witnesses, but "that convenience is gained only at the expense of [the opposing party's] witnesses"); *Tingstol*, 18 F. Supp. 2d at 934 ("Transfer is inappropriate if it 'merely transforms an inconvenience for one party into an inconvenience for the other party.'" (quoting *Sage Products, Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993)). Therefore, the convenience of the parties is also a neutral factor.

The convenience of the witnesses presents a closer question. Hollman argues Jefferson is a non-party "central witness" for both parties, and his residence in the Northern District of Texas justifies transfer. (Mot. at 6.) The appearance of witnesses is often viewed as the most important factor in the transfer analysis. *First Nat'l Bank*, 447 F. Supp. 2d at 913; *Tingstol*, 18 F. Supp. 2d at 933. "More weight is afforded non-party witnesses than witnesses within the control of the parties, as it is presumed that party witnesses will appear voluntarily." *First Nat'l Bank*, 447 F. Supp. 2d at 913. "[T]he presence of third party witnesses outside the subpoena power of this court is a factor which weighs heavily in favor of transferring." *Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 776 F. Supp. 1271, 1277 (N.D. Ill. 1991). In assessing the convenience of witnesses, we "look[] beyond the number of witnesses to be called and examin[e]

8

the nature and quality of the witnesses' testimony with respect to the issues in the case." *Morton Grove Pharms.*, 525 F. Supp. 2d at 1045; *Tingstol*, 18 F. Supp. 2d at 933. In addition, a party must go "beyond vague generalizations" in arguing that key witnesses will be unavailable at trial because they are beyond the court's reach. *Heller*, 883 F.2d at 1293.

The parties dispute whether Jefferson is a third-party witness. Hollman argues Jefferson was an independent contractor and is therefore not a party witness. Siteline contends Jefferson is a Hollman agent or employee, making him a witness within Hollman's control. The parties offered competing affidavits and evidence in support of their positions and submitted supplemental briefs addressing the issue. (*See* Def.'s Supp. Br. (Dkt. No. 20); Pl.'s Supp. Br.)

Hollman argues the affidavits of Travis Hollman and Scott Jefferson establish that Jefferson was not a Hollman employee or agent, Hollman did not control Cal Installations or Jefferson, and neither Cal Installations nor Jefferson served as "employees or project supervisors" on any projects with Siteline. (Def.'s Supp. Br. at 3–4; Hollman Aff. (Dkt. No. 12–1) at 2; Jefferson Aff. at 1–2.) Hollman further argues Jefferson "is unavailable to voluntarily travel to Chicago for a deposition or trial because his business, Cal Installations, is located in Texas, and he has no current jobs that require his presence in Chicago." (Def.'s Supp. Br. at 5.) Hollman asserts that it is "undisputed that there was confusion in the billing on the jobs involved in this case" and argues that Siteline was "well aware that Scott Jefferson was with Cal Installations, not Hollman." (*Id.* at 3–4.) In support of its position, Hollman also cites invoices indicating Siteline recognized Hollman and Cal Installations as separate entities with separate client numbers. (*Id.* at 4; Def.'s Supp. Br., Ex. 2 (Dkt. No. 20–1).)

Siteline contends that Jefferson was Hollman's agent under the doctrine of apparent authority, because Hollman held Jefferson out as its agent, knew or should have known that its

9

actions would have led Siteline to reasonably believe Jefferson had the authority to bind Hollman to the contracts at issue, and created an appearance that Jefferson had the authority to negotiate, execute, and perform contracts on Hollman's behalf. (Pl.'s Supp. Br. at 5–6; Pl.'s Resp. at 5; Hogan Aff. (Dkt. No. 21–1) ¶ 6.) Siteline contends Jefferson used the email address "scott@hollman.com" with a signature block that variably included the Hollman logo, address, and website; stated "Scott Jefferson, Project Manager/Athletics"; or stated "Scott Jefferson, Athletic Installations, Hollman, Inc." (Pl.'s Supp. Br., Exs. B–C (Dkt. No. 21–1).) On the first of the projects, Siteline communicated with Bryan McCauley of Hollman, who copied Jefferson using his "scott@hollman.com" email address, and allowed Jefferson to answer Siteline's questions and coordinate on the project. (*Id.*) Siteline argues the emails demonstrate Hollman allowed Jefferson to conduct Hollman business and created (or at least did not correct) the appearance that Jefferson was a Hollman employee. (Pl.'s Supp. Br. at 7.) Siteline also points to a September 16, 2016 email sent by Travis Hollman, stating "Scott Jefferson's employment ended at Hollman over a year ago," which Siteline argues directly contradicts the contrary assertions made in the affidavits of Hollman and Jefferson. (Pl.'s Supp. Br., Ex. E (Dkt. No. 21–1).)

In deciding whether transfer is proper under § 1404(a), we accept the non-moving party's facts as true for purposes of the transfer motion. *See Cinema Sys.*, 545 F. Supp. at 405, n.4. Siteline alleges that it at all times believed Jefferson was an agent or employee of Hollman and that it contracted with Hollman directly. (*See* Pl.'s Resp. at 5; Frangella Aff. ¶¶ 10–13.) It further argues that Hollman's conduct created the reasonable impression that Jefferson was its agent and had the authority to bind Hollman to the contracts at issue. (Pl.'s Supp. Br. at 5–7.) "A principal will be bound by not only that authority which he actually gives to another, but also

10

by the authority which he appears to give." *Gilbert v. Sycamore Mun. Hosp.*, 156 Ill. 2d 511, 523, 622 N.E.2d 788, 795 (Ill. 1993); *Lundberg v. Church Farm, Inc.*, 151 Ill. App. 3d 452, 461, 502 N.E.2d 806, 813 (2d Dist. 1986); *see also Curto v. Illini Manors, Inc.*, 405 Ill. App. 3d 888, 895, 940 N.E.2d 229, 235 (3d Dist. 2010) ("Apparent authority arises when a principal creates a reasonable impression to a third party that the agent has the authority to perform a given act."). "To prove apparent authority, the proponent must show that (1) the principal consented to or knowingly acquiesced in the agent's exercise of authority, (2) based on the actions of the principal and agent, the third party reasonably concluded that the agent had authority to act on the principal behalf, and (3) the third party justifiably relied on the agent's apparent authority to his detriment." *Curto*, 405 Ill. App. 3d at 895; 940 N.E.2d at 235–36. An agent's authority "may be presumed by the principal's silence if the principal knowingly allows another to act for him as his agent." *Id.* "Because apparent authority is not actual, but only ostensible, an apparent agent may make representations the specifics of which the principal is unaware, and still bind the principal." *Patrick Eng'g, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 36, 976 N.E.2d 318, 330.

Insofar as Hollman denies that Jefferson was its agent or employee and Siteline contends Hollman created a reasonable impression to Siteline that Jefferson was a Hollman agent with the authority to act on its behalf with regard to the subject projects, Jefferson's testimony is not crucial to the determination of the case. *See Avesta Sheffield, Inc. v. Olympic Cont'l Res., L.L.C.*, No. 99 C 7647, 2000 WL 198462, at *6 (N.D. Ill. Feb. 14, 2000) (finding a third-party witness' testimony non-essential where the central issue was whether it had apparent authority to act for the defendant). Apparent authority is determined based on Hollman's statements and actions as the principal. *Curto*, 405 Ill. App. 3d at 895; 940 N.E.2d at 235–36. Accordingly, Jefferson's

11

residence in the Northern District of Texas and his unwillingness to participate in Illinois, while potentially relevant, does not require transfer here where the key issues in the case do not appear to hinge on his testimony.

### B. Interests of Justice (or Public) Factors

Finally, we consider whether transferring to the Northern District of Texas is in the interest of justice. The "interest of justice" analysis relates to "the efficient functioning of the courts, not to the merits of the underlying dispute," and "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220; *see also Research Automation*, 626 F.3d at 978. "For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Research Automation*, 626 F.3d at 978 (internal citations omitted); *Heller*, 883 F.2d at 1293 ("The 'interest[s] of justice' include such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." (quoting *Coffey*, 796 F.2d at 221)).

#### 1. Docket Congestion and Speed to Trial

We first consider comparative docket congestion and likely speed to trial in the transferor and potential transferee forums. "Two statistics bear the most relevance in this analysis: (1) the median number of months from filing to disposition; and (2) the median number of months from filing to trial." *Tingstol*, 18 F. Supp. 2d at 934. Hollman argues the average time for litigants to reach disposition or trial is "significantly" shorter in the transferee district. (*Id.* (citing Admin. Office of the U.S. Courts, *Federal Court Management Statistics* (2016), *available at*

http://www.uscourts.gov/statistics-reports/analysis-reports/federal-court-management-statistics (indicating the average time from civil filing to disposition in this district is 7.33 months versus 6.70 months in the transferee district, and the average time from civil filing to trial in this district is 39.40 months versus 24.07 months in the proposed transferee district).) The median number of months to disposition in both districts is essentially the same, differing by less than one month, but the time to trial is faster in the proposed transferee district, tipping the scales slightly in favor of transfer. *See, e.g.*, *First Nat'l Bank*, 447 F. Supp. 2d at 914. However, "[j]udicial economy is important, but it is usually not dispositive alone in a transfer analysis." *Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 963 (N.D. Ill. 2013). Moreover, we agree with Siteline that time to disposition is a better indicator given the small number of cases that reach trial. *See Genocide Victims*, 804 F. Supp. 2d at 826; *see also* Statistical Tables for the Federal Judiciary, Table C–4, *available at* http://www.uscourts.gov/statistics/table/c-4/statistical-tables-federal-judiciary/2016/12/31. In sum, this factor weighs slightly in favor of transfer.

2. <u>Familiarity with Applicable Law</u>

Hollman argues that choice of law issues dictate that Texas law will determine the parties' contract dispute, and therefore, a district court sitting in Texas will be more familiar with the applicable law. (Mot. at 7.) "A district court sitting in diversity must apply the choice of law principles of the forum state . . . to determine which state's substantive law governs the proceeding." *W. Bend Mut. Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013); *accord Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009); *Fed. Ins. Co. v. J.K. Mfg. Co.*, 933 F. Supp. 2d 1065, 1070 (N.D. Ill. 2013). As a result, we apply Illinois choice-of-law rules to this case. *Id.*; *see also Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045, 1048 (7th Cir. 2016) ("Generally, when a case is transferred from a district court

13

with proper venue to another district court, the transferee court will apply the choice-of-law rules of the state in which the transferor court sits."). Illinois only requires a choice-of-law determination "when a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155, 879 N.E.2d 893, 898 (Ill. 2007); *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 14, 10 N.E.3d 902, 905. "In the absence of a conflict, Illinois law applies as the law of the forum." *Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*, 2011 IL App (1st) 101723, ¶ 47, 963 N.E.2d 930, 945 (quoting *SBC Holdings, Inc. v. Travelers Cas. & Sur. Co.*, 374 Ill. App. 3d 1, 13, 872 N.E.2d 10, 21 (1st Dist. 2007)).

Siteline contends that "minor differences" exist between Texas and Illinois law with respect to its claims for *quantum meruit*, but it does not assert the differences would result in a difference in the outcome. (Pl.'s Supp. Br. at 5.) Hollman took no position on the issue. As there is no conflict, Illinois law applies to Siteline's *quantum meruit* claims. *Universal Underwriters*, 2011 IL App (1st) ¶ 47, 963 N.E.2d at 945; *SBC Holdings*, 374 Ill. App. 3d at 13, 872 N.E.2d at 21.

With respect to Siteline's breach of contract claims, the parties likewise agree that Illinois and Texas law do not differ with respect to substantive contract law principles. (Pl.'s Supp. Br. at 4–5; Def.'s Supp. Br. at 3.) However, Hollman argues that unlike Illinois law, under Texas law, attorneys' fees are recoverable against an individual or corporation in addition to the amount of a valid claim for breach of contract. (Def.'s Supp. Br. at 3 (citing Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (authorizing attorneys' fees for breach of contract).) While on its face, this difference seems to present a conflict, Illinois courts treat rules governing the award of attorneys' fees as procedural, rather than substantive. *Midwest Grain Prod. of Ill.,*

14

*Inc. v. Productization, Inc.*, 228 F.3d 784, 792 (7th Cir. 2000) (finding Oklahoma law applied to plaintiff's contract claims, but Illinois courts would refuse to follow Oklahoma's statute providing prevailing parties are entitled to attorneys' fees in a civil action to recover on a contract, "even in a contract case governed by Oklahoma law"); *see also Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 388 (7th Cir. 2002) ("The principles for determining when a losing party must reimburse the winner for the latter's expense of litigation are usually not a part of a substantive body of law, such as contract law, but a part of procedural law."). Accordingly, there is no conflict between the substantive law governing contract disputes in Illinois and Texas, and we therefore apply Illinois law as the law of the forum. *Universal Underwriters*, 2011 IL App (1st) ¶ 47, 963 N.E.2d at 945; *SBC Holdings*, 374 Ill. App. 3d at 13, 872 N.E.2d at 21. This factor therefore weighs against transfer.

### 3. Relationship of the Communities

Judges in both districts are equally competent to preside over the questions at issue and both communities have a significant connection to the controversy. In particular, "Illinois has a strong interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state-actors." *First Nat'l Bank*, 447 F. Supp. 2d at 914 (quoting *Tranzact Techs., Inc. v. 1Source Worldsite*, No. 01 C 8508, 2002 WL 122515, at *6 (N.D. Ill. Jan. 30, 2002)). This is particularly true where the Plaintiff has chosen to bring suit in its home forum and where Illinois law will apply to its claims.

\*   \*   \*

Considering all of the public interest factors and the private interest factors, we cannot conclude that Hollman has met its heavy burden under § 1404(a) of establishing that the transferee court is "clearly" more convenient or that transfer would further the interest of justice.

15

*Coffey*, 796, F.2d at 219–20; *Tingstol*, 18 F. Supp. 2d at 935. Balancing all of the facts and circumstances, we conclude that while the Northern District of Texas would be preferable to and more convenient for Hollman, transfer is not warranted because "the balance of convenience is a close call," and "merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation*, 626 F.3d at 978–79. Accordingly, we deny Hollman's motion.

## CONCLUSION

For the foregoing reasons, we deny Hollman's motion to transfer this action to the United States District Court for the Northern District of Texas, Dallas Division. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: November 28, 2017
Chicago, Illinois

16